SANDRA C. MUÑOZ, ESQ., SBN 190404
LAW OFFICES OF SANDRA C. MUÑOZ
A PROFESSIONAL LAW CORPORATION
5429 E. Beverly Blvd.
Los Angeles, CA 90022
Telephone:  (323) 720-9400
Facsimile:  (323) 720-9090
Email: sandra@scmlawoffices.com

Attorney for Plaintiff
LETICIA BEDOLLA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA BEDOLLA, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>AECOM, a California Corporation, URS FEDERAL SERVICES, INC., a Maryland Corporation, and DOES 1-10,<br><br>  Defendants. | Case No.: 5:19-cv-1281<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  Sex Discrimination in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2<br><br>2.  Sexual Harassment in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2<br><br>3.  Retaliation in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff LETICIA BEDOLLA alleges as follows:

1.      This Court has jurisdiction of this matter pursuant to 42 U.S.C. §2000e-16(c), 42 U.S.C. § 2000e-5, 42 U.S.C. § 2000e-3, and 28 U.S.C. §1331.

2.      This is a district of proper venue.  At the time of the events out of which this action arose, plaintiff worked for defendants in San Bernardino County, part of the Eastern Division of the Central District of California.

3.      Plaintiff LETICIA BEDOLLA is a resident of San Bernardino County,

1

**COMPLAINT FOR DAMAGES**

California.

4.    Defendants are AECOM, a corporation headquartered and doing business in California, and URS FEDERAL SERVICES, INC., a Maryland corporation also doing business in California.

5.    Plaintiff is ignorant of the true names and capacities of the Defendants sued as DOES 1 through 10, inclusive, and therefore sue said defendants by those fictitious names.  Plaintiff will seek leave of court to amend this Complaint to allege their true names and capacities when they have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the unlawful actions, policies and practices alleged in this Complaint.

6.    Plaintiff is informed and believes and thereon alleges that, at all relevant times mentioned herein, Defendants, and each of them, were the agents, servants, employees, partners, joint-venturers, joint-employers or co-conspirators of each other defendant, and that each defendant was acting within the course, scope and authority of such agency, employment, partnership, joint venture or conspiracy, and that each defendant, directly or indirectly, authorized, ratified and approved the acts of the remaining defendants, and each of them.

## FACTS COMMON TO ALL CAUSES OF ACTION

7.    Plaintiff Leticia Bedolla began working for AECOM and URS Federal Services (collectively referred to as "AECOM/URS") on June 28, 2016 as a sandblaster at the Marine Corps Logistic Base in Barstow, California.  In that position, Ms. Bedolla worked alongside employees of both AECOM/URS and also direct employees of the Department of Defense (hereinafter referred to as "DOD:).  In June 2017, Gerald Chavez, a direct employee of the DOD, told Ms. Bedolla he was going to ask that she be hired as a direct employee of the DOD.  When Ms. Bedolla thanked him, Chavez asked what he would get in return.  Ms. Bedolla responded that he would get a great employee. Chavez then told Ms. Bedolla that that would not be enough and he wanted something

**COMPLAINT FOR DAMAGES**

else. As he made this comment, Chavez looked at Ms. Bedolla in a sexually suggestive and inappropriate manner. Chavez also told Ms. Bedolla that all the women who have gotten hired into permanent positions have had to give something in exchange. Uncomfortable with Chavez's comments, Ms. Bedolla thanked him and walked out of the office where they were speaking.

8.      In August 2017, Chavez offered and made a personal loan to Ms. Bedolla in the amount of $2,500 when he learned that she was dealing with a family issue. Three days after Ms. Bedolla accepted the loan offer, Chavez assaulted and grabbed Ms. Bedolla from behind while she worked and then pressed her body against him. Ms. Bedolla immediately screamed and Chavez let her go. She then turned to him and said in no uncertain terms that he was not to touch her. Ms. Bedolla also told Chavez that she did not want the loan if he thought it granted him the right to touch her. Chavez then moved away but did not leave her work area. Instead, he began to sing a song to Ms. Bedolla. Ms. Bedolla asked him to stop and to leave her alone.

9.      The next day, Chavez apologized to Ms. Bedolla, saying he had been wrong and promising never to touch her again. Chavez also asked Ms. Bedolla to please accept the loan because otherwise he would feel bad about his conduct. Ms. Bedolla accepted his apology and eventually the loan that she agreed to pay back at a twenty-percent interest rate. Ms. Bedolla also reminded Chavez that she did not like to be touched.

10.      In September 2017, Ms. Bedolla took two-weeks off from work to undergo surgery. She returned to work with restrictions on light duty. After her return, Chavez once again began bothering her, making comments about her physical appearance and asking at least one co-worker named Robert Aguayo if she had a good ass or not.

11.      During the first week of October 2017, Chavez once again assaulted and battered Ms. Bedolla when he grabbed her buttocks so forcefully that she felt she was being lifted off the ground. Ms. Bedolla slammed her back against a computer desk as she tried to get away from Chavez. Ms. Bedolla immediately told Chavez not to touch her and he responded by saying he had given her money. Ms. Bedolla corrected Chavez

and told him it had not been a gift but rather a loan, a business transaction and that she was paying him a 25% interest rate on the loan.  Chavez did not respond and Ms. Bedolla walked away.  That same week, Ms. Bedolla was working, painting a post that required her to be on her knees when Chavez walked by and remarked, "That's it, just like that, that's how I want to get you."

12.    Later in October, Ms. Bedolla was working in Bay 5 of the Marine Corps Logistic Base when she unexpectedly felt a hand between her buttocks.  Ms. Bedolla spun around and saw Chavez.  Because she feared for her safety, Ms. Bedolla picked up a nearby water hose and sprayed Chavez.  She told him Chavez again to not touch her.  She also told Chavez that she would report him if he touched her again.  Chavez responded by warning Ms. Bedolla that she could not report him because she did not have any witnesses.  Chavez also told Ms. Bedolla that she would lose her job if she accused someone without any witnesses.  According to Chavez, Ms. Bedolla was only a contractor and he was a long-time employee who knew the rules.

13.    After assaulting her for a third time, Chavez began referring to Ms. Bedolla by using the Spanish insult "cabrona" instead of calling her by her name.  He also began yanking on her sleeve whenever he needed her attention for a work-related matter.  Chavez also began making fun of Ms. Bedolla's English-speaking abilities.

14.    On or about November 15, 2017, Ms. Bedolla returned from having lunch with Ms. Kelly MacKenzie, an employee of AECOM.  Chavez asked Ms. Bedolla in front of many of their co-workers if she had just come from doing it doggie style.  The other co-workers chimed in again, calling Ms. Bedolla and Ms. MacKenzie *mariconas* and making other homophobic, offensive and bigoted comments.

15.    The next day, Ms. Bedolla once again had lunch with Ms. MacKenzie.  Upon her return to the break area, Ms. Bedolla heard the same co-workers laughing.  Robert Jenners then made an inappropriate and homophobic comment to her.  Ms. Bedolla turned to Jenners and warned him to be careful because their comments were sexual harassment.  Chavez responded by stating it was Ms. Bedolla who was sexually

harassing them by hugging and kissing with Ms. MacKenzie.

16.    Later that same day, Ms. Bedolla went to her supervisor Manny Steele to tell him about the harassment.  Steele responded by telling Ms. Bedolla that he needed to tell his (and Ms. Bedolla's) supervisor Francisco Ortega Renteria about her complaint.  Ms. Bedolla was then called to meet with Ortega and Steele.  During that meeting, Ortega directed Ms. Bedolla to write a statement.  When Ms. Bedolla asked him for his help because she did not feel comfortable writing in English, Ortega told her no and instructed her to write the statement herself.  Ms. Bedolla insisted that she could not write the statement in English and Ortega eventually and begrudgingly assisted her in doing so.

17.    The next day, November 16th, Chavez called Ms. Bedolla over as he performed an inspection.  As Ms. Bedolla approached him, Chavez opened his arms and said he wanted to hug her.  Ms. Bedolla immediately stopped, put both of her hands in front of her and said, "No." Chavez insisted he wanted to hold her and Ms. Bedolla once again refused.  Chavez then began screaming at Ms. Bedolla, falsely accusing her of not doing her work correctly.

18.    Moments later, Ms. Bedolla saw Chavez walking with a DOD supervisor, Jared Comb.  Ms. Bedolla went up to both of them and asked to speak to Comb who she knew as Mr. Jared.  Ms. Bedolla then reported all of the harassment to which she had been subjected including Chavez's assaults of her.  Comb contacted Steele and Ortega to inform them of Ms. Bedolla's complaint.

19.    On November 30, 2017, Ms. Bedolla submitted a declaration detailing the harassment to which she and Ms. MacKenzie had been subjected by both the DOD and AECOM employees.

20.    After making her complaint, Comb told Ms. Bedolla that she was being moved so that she did not have to work near Chavez.  Ms. Bedolla asked why she was being moved since she had not done anything wrong.  Eventually, Chavez was the one moved but to a department that was still fairly close to the department where Ms.

**COMPLAINT FOR DAMAGES**

Bedolla worked.  Because they were still close in proximity, Chavez continued to harass Ms. Bedolla by repeatedly passing by her work area and speaking of her in negative and offensive ways.  On at least one occasion, Chavez also returned work performed by Ms. Bedolla, falsely claiming it had not been done properly.

21.    On February 9, 2018, plaintiff Leticia Bedolla filed a charge of discrimination with the E.E.O.C.  The Notice of Right to Sue was issued and mailed on April 25, 2019.  This action is brought within 90 days of plaintiff's receipt of the Notice of Right to Sue.

<u>**FIRST CAUSE OF ACTION**</u>

**Sex Discrimination in Violation of Title VII of the Civil Rights Act,**

**42 U.S.C. § 2000e-2**

(Against all Defendants)

22.    Plaintiff re-alleges and incorporates by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

23.    Defendants discriminated against plaintiff because of her sex.

24.    As a direct and proximate result, plaintiff was harmed; she has been humiliated, suffered emotional pain and distress, mental anguish, loss of enjoyment of life and has suffered economic damages.

25.    Plaintiff seeks compensatory damages from defendants in an amount to be proven at trial.  Defendants' actions were evil, with malice, and in willful disregard of plaintiff's rights.  Accordingly, plaintiff seeks punitive damages in an amount to be proven at trial. Pursuant to 42 U.S.C. § 2000e-5(k) and all other applicable statutory provisions, plaintiff seeks an award of attorneys' fees and costs.

<u>**SECOND CAUSE OF ACTION**</u>

**Sexual Harassment in Violation of Title VII of the Civil Rights Act,**

**42 U.S.C. § 2000e-2**

(Against all Defendants)

26.    Plaintiff re-alleges and incorporates by reference each and every allegation

**COMPLAINT FOR DAMAGES**

of the preceding paragraphs as though fully set forth herein.

27.     The conduct of plaintiff's co-workers, third-parties, and supervisors imposed a sexually hostile work environment on plaintiff sufficiently severe as to alter the terms and conditions of plaintiff's employment.  Defendants failed to take timely and appropriate steps in response to plaintiff's complaints.

28.     As a direct and proximate result, plaintiff was harmed; she has been humiliated, suffered emotional pain and distress, mental anguish, loss of enjoyment of life and has suffered economic damages.

29.     Plaintiff seeks compensatory damages from defendants in an amount to be proven at trial.  Defendants' actions were evil, with malice, and in willful disregard of plaintiff's rights.  Accordingly, plaintiff seeks punitive damages in an amount to be proven at trial. Pursuant to 42 U.S.C. § 2000e-5(k) and all other applicable statutory provisions, plaintiff seeks an award of attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Retaliation in Violation of Title VII of the Civil Rights Act,

### 42 U.S.C. § 2000e-3

(Against all Defendants)

26.     Plaintiff re-alleges and incorporates by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

27.     When plaintiff complained about the sexual harassment and discrimination, defendants failed to take timely and appropriate steps in response to plaintiff's complaint.  Instead, defendants retaliated against plaintiff by, among other things, changing her job, ostracizing her, refusing her medical attention, and allowing the harassment and discrimination to continue, in contravention of 42 U.S.C. § 2000e-3.

28.     As a direct and proximate result, plaintiff was harmed; she has been humiliated, suffered emotional pain and distress, mental anguish, loss of enjoyment of life and has suffered economic damages.

29.     Plaintiff seeks compensatory damages from defendants in an amount to be

**COMPLAINT FOR DAMAGES**

proven at trial. Defendants' actions were evil, with malice, and in willful disregard of plaintiff's rights. Accordingly, plaintiff seeks punitive damages in an amount to be proven at trial. Pursuant to 42 U.S.C. § 2000e-5(k) and all other applicable statutory provisions, plaintiff seeks an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    For compensatory damages, including prejudgment interest, in an amount to be proven at trial.

2.    For punitive damages.

3.    For attorneys' fees and costs pursuant to 2 U.S.C. § 2000e-5(k).

4.    Any other relief or damages allowed by law, or statutes not set out above and such further relief as the Court deems just and proper at conclusion of trial.

## DEMAND FOR JURY TRIAL

Plaintiff LETICIA BEDOLLA demands a jury trial on all issues so triable.


DATED: July 12, 2019                    Respectfully submitted,

LAW OFFICES OF SANDRA C. MUÑOZ
A PROFESSIONAL LAW CORPORATION


By:    _/s/ Sandra C. Muñoz_
SANDRA C. MUÑOZ
Attorneys for Plaintiff
LETICIA BEDOLLA

**COMPLAINT FOR DAMAGES**